UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FREDDIE WILLIAMS, JR.,

     Plaintiff,

v.                                                    Case No. 04-71064
                                                 Case No. 04-71841

DETROIT BOARD OF EDUCATION,
KENNETH BURNLEY, LAVONNE         Honorable Patrick J. Duggan
SHEFFIELD, AND JOHN DOES I AND II,

     Defendants.
_____/


## OPINION AND ORDER GRANTING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District of
Michigan, on October 30, 2007.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
                 U.S. DISTRICT COURT JUDGE

Plaintiff Freddie Williams, Jr. ("Plaintiff") filed these consolidated lawsuits after Defendants terminated him as principal of Trombly Alternative High School ("Trombly") in January 2002, and allegedly forced him to retire from his position as a tenured teacher in April 2002. Presently before the Court is Defendants' renewed motion for summary judgment, filed after the Sixth Circuit Court of Appeals remanded the matter to this Court. The motion has been fully briefed and, on September 5, 2007, this Court issued a Notice informing the parties that it is dispensing with oral argument pursuant to Eastern

District of Michigan Local Rule 7.1(e)(2).

## I. Factual and Procedural Background[1]

Plaintiff was employed by the Detroit Public Schools, first as a teacher commencing in May 1978, and then as a school administrator at various locations commencing in 1993. In 1997, Plaintiff became the principal at Trombly.

Beginning in early 2000, the Detroit Board of Education ("Board") began receiving complaints about Plaintiff. Specifically, individuals reported that Plaintiff was misappropriating school district funds and equipment. Around March 30, 2001, the school district initiated an audit of Trombly to investigate the allegations against Plaintiff. An audit report was prepared in December 2001. On December 18, 2001, the Detroit News published an article about Plaintiff which described the conclusions about his misdeeds that were set forth in the Board's audit report.

Plaintiff subsequently filed these consolidated lawsuits alleging that Defendants violated various state and federal laws when they terminated Plaintiff and when they disseminated to the press the results of the school audit purportedly showing that Plaintiff misappropriated public school funds and equipment for his own benefit. Defendants subsequently moved for summary judgment with respect to all of the claims in Plaintiff's complaints. With respect to Plaintiff's defamation claim, Defendants argued that they were protected by Michigan's shared interest privilege.

---

[1] A more detailed factual background can be found in this Court's previous Opinion and Order Granting Defendants' Motion for Summary Judgment. 2005 WL 2219032 (E.D. Mich. Sept. 9, 2005) (unpublished opinion).

This Court granted Defendants' motion for summary judgment and dismissed Plaintiff's lawsuits with prejudice on September 9, 2005. Plaintiff filed an appeal. On March 5, 2007, the Sixth Circuit reversed the Court's decision with respect to Plaintiff's defamation claim but affirmed with respect to Plaintiff's remaining claims. *Williams v. Detroit Bd. of Educ., et al.*, No. 05-2365 (6th Cir. Mar. 5, 2007) (per curiam). In its decision, the Sixth Circuit indicated specifically that, upon remand, Defendants "may move again for summary judgment on other grounds." *Id*. at 4.

## II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient

3

evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## III.  Defendants' Arguments

Defendants raise a number of arguments in support of their renewed motion for summary judgment with respect to Plaintiff's defamation claim. First, Defendants argue that Plaintiff has failed to plead the claim with particularity. Specifically Defendants contend that, throughout the tortured procedural history of this case, Plaintiff never has indicated exactly which of Defendants' statements support his defamation claim. Next, Defendants contend that Michigan's statutory fair reporting privilege, MICH. COMP. LAWS ANN. § 600.2911(3), precludes Plaintiff's defamation claim as their dissemination of the audit report was a "fair and true" report of matters of public record. Third, Defendants argue that, as principal of Trombly, Plaintiff was a public figure or at least a limited public figure and therefore Plaintiff must show that Defendants acted with actual malice to prevail. Defendants contend that Plaintiff lacks evidence of actual malice. Fourth, Defendants contend that they are protected by a qualified privilege. Finally, Defendants argue that Plaintiff cannot sustain his burden of establishing that the alleged defamatory statements were false.

## IV.  Applicable Law and Analysis

4

The elements of a cause of action for defamation are: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Rouch v. Enquirer & News of Battle Creek*, 440 Mich. 238, 251, 487 N.W.2d 205, 211 (1992) (citing *Locricchio v. Evening New Ass'n*, 438 Mich. 84, 115-16, 476 N.W.2d 112 (1991)).

### A. Whether Plaintiff Has Sufficiently Pled His Defamation Claim

A plaintiff must plead a defamation claim with specificity. *Royal Palace Homes, Inc. v. Channel 7 of Detroit*, 197 Mich. App. 48, 52, 495, N.W.2d. 392, 394 (Mich. Ct. App. 1992). The plaintiff cannot rely on general, conclusory allegations to support a defamation claim, but must specifically identify the statements alleged to be defamatory. *Id*. at 52-54, 57, 495 N.W.2d. at 394-95. Defendants argue that Plaintiff has failed to identify specific defamatory statements by them– as opposed to statements by the Detroit News and Detroit Free Press– to support his claim. Plaintiff responds that he set forth Defendants' defamatory statements in paragraphs 47(a)-(r) of his Amended Complaint.

In paragraphs 47(a)-(r) of his Amended Complaint, Plaintiff lists many of the charges against him (although not all) that he claims the Board alleged in its audit report. Plaintiff, however, fails to specify which statements within the charges he claims are false. Plaintiff's attachment of the newspaper articles to his Amended Complaint does not cure any deficiency in his pleadings, as he does not specify which statements within the article are false and, in any event, the articles are not Defendants' statements. Thus it

5

appears that Plaintiff has failed to identify the exact defamatory words that support his defamation claim.

Nevertheless, the Court does not conclude that the deficiencies in Plaintiff's pleading warrant summary judgment at this time. Despite the fact that this case has been pending for years and that Defendants previously moved for summary judgment, they never before argued that Plaintiff's defamation claim was insufficiently pled. Had Defendants raised this argument earlier, Plaintiff likely would have sought and the Court likely would have granted him leave to amend his complaint to specifically identify the allegedly false statements by Defendants that support his defamation claim. As the Court finds that Defendants are entitled to summary judgment on other grounds, *see infra*, it sees no reason for Plaintiff to correct the deficiency now.

### B. Whether Michigan's Fair Reporting Privilege Precludes Plaintiff's Defamation Claim

Michigan law provides a privilege from damages in a defamation action for statements that constitute a "fair and true" report of matters of public record:

> . . . Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report. . . .

MICH. COMP. LAWS ANN. § 600.2911(3). Defendants contend that they are entitled to summary judgment with respect to Plaintiff's defamation claim because their dissemination of the audit report, a public record discussing Plaintiff's misappropriation

of school funds and equipment, is privileged under this section. The plain language of the statute and the cases applying the statute, however, indicate that the privilege applies only to newspapers, publishers, reporters or other individuals that broadcast a public record, not to the individual(s) who created the public record itself.

For example, the Michigan courts have applied Section 600.2911(3) to preclude defamation claims against news broadcasters, publishers, and reporters that published a "fair and true" report of matters of public record. *See, e.g., Northland Wheels Roller Skating Ctr., Inc. v. Detroit Free Press, Inc.*, 213 Mich. App. 317, 539 N.W.2d 774 (Mich. Ct. App. 1995) (extending the statutory fair reporting privilege to newspaper articles that represented "fair and true" reports of matters contained in the police department's written reports or records which generally were available to the public under the Freedom of Information Act); *Stablein v. Schuster*, 183 Mich. App. 477, 455 N.W.2d 315 (Mich. Ct. App. 1990) (holding that a newspaper publisher was statutorily immune from defamation liability for reporting the contents of a letter read at a school board meeting as the letter was read at a public meeting and the publisher accurately reported its contents in the newspaper). The Michigan Court of Appeals has further noted that the privilege may apply to shield parents of students who made allegedly defamatory statements regarding the school superintendent, where the communications involved information contained in public documents from the district where the superintendent previously worked. *Kefgen v. Davidson,* 241 Mich. App. 611, 623 n.7, 617 N.W.2d 351, 359 n.7 (Mich. Ct. App. 2000). In the Sixth Circuit, the privilege has been applied to non-media defendants' statements where the statements accurately reflected the contents

of a public record. *See Amway Corp. v. Proctor & Gamble Co.*, 346 F.3d 180 (6th Cir. 2003) (finding that a competitor's and its law firm's posting on the Internet of the competitor's allegedly defamatory federal-court complaint against a manufacturer was within the fair reporting privilege of Section 600.2911(3)).

Based on the above, if Plaintiff had filed his defamation claim against the Detroit Free Press or the Detroit News for publishing the contents of Defendants' audit report, the Court probably would conclude that the "fair and true" reporting privilege applies.[2] The plain language of the statute and the cases applying the statute, however, lead the Court to conclude that the privilege does not extend to Defendants– the creators of the public record who provided it to the media. Further leading the Court to this conclusion is the Michigan Court of Appeals' indication that the published statements' accuracy in reporting a matter contained in a public record, and not the accuracy of the public record itself, is the primary focus in determining whether the privilege applies. *Mayfield v. Detroit News*, No. 180687, 1996 WL 767474, at *1 (Mich. Ct. App. Aug. 2, 1996). The Court therefore concludes that the "fair and true" reporting privilege set forth in Section 600.2911(3) does not preclude Plaintiff's defamation claim.

> **C. Whether Plaintiff, as Principal of Trombly, Was a Public Official or Limited Public Figure Requiring a Showing that Defendants Acted with Actual Malice When They Disseminated the Audit Report and, if so, Whether Plaintiff Demonstrates Actual Malice**

To prevail in a defamation claim, a plaintiff who is considered to be a "public

---

[2]For the privilege to apply, the publication must substantially represent– i.e. be a fair and true report of– the information contained in the public record. *See Northland Wheels Roller Skating Ctr.*, 213 Mich. App. at 325, 539 N.W.2d at 778.

official" or "public figure" must prove that the defendant acted with "actual malice" when publishing the alleged defamatory material. *New York Times v. Sullivan*, 376 U.S. 254, 279-280, 84 S. Ct. 710, 726 (1964). A defendant acts with "actual malice" when he acts "with knowledge that [the statement] was false or with reckless disregard of whether it was false . . ." *Id.* at 280, 710 S. Ct. at 726. In *Rosenblatt v. Baer*, the Supreme Court elaborated on who is a "public official" for purposes of the *New York Times* malice standard, providing: "It is clear . . . that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 676 (1966). The Court further provided that the analysis of whether a plaintiff is a public official depends upon the following:

> Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees . . . the *New York Times* malice standard[] apply.

*Id.* at 86, 86 S. Ct. at 676. Neither the Sixth Circuit nor the Michigan courts have addressed whether a school principal is a public official for purposes of a defamation claim. While other courts have addressed and resolved the issue, they disagree on the answer.

Courts finding that school principals are not public officials for purposes of the *New York Times* malice standard include the following: *Beeching v. Levee*, 764 N.E.2d

9

669, 679 (Ind. Ct. App. 2002) (concluding that school principal was not a "public official" or "public figure" for purposes of defamation action which the court characterized as "not concern[ing] broader education issues of public concern, but merely an internal, work-place dispute"); *Ellerbee v. Mills*, 422 S.E.2d 539, 540 (Ga. 1992) (finding that, under "normal circumstances" a public school principal is not a public official); *McCutcheon v. Moran*, 425 N.E.2d 1130 (Ill. App. Ct. 1981) (finding that principal was not a public official when she filed a libel claim against the school janitor after the janitor publicly accused the principal of kicking him in the buttocks); *E. Canton Educ. Ass'n v. McIntosh*, 709 N.E.2d 468, 473-74 (Ohio 1999) (agreeing with those cases holding that a public school principal is not a public official for purposes of applying the *New York Times* standard in defamation cases).

In the following cases, the courts held that school principals are public officials: *Johnson v. Robbinsdale Indep. Sch. Dist. No. 281*, 827 F. Supp. 1439, 1443 (D. Minn. 1993) (finding that "public school principals criticized for their official conduct are public officials" where principal sued students' parents after they wrote a letter critical of the principal's conduct); *Stevens v. Tillman*, 855 F.2d 394, 403 (7th Cir. 1988) (finding that principal was a public official where "her performance as a public official was open to public comment" and, while not an elected public official, "she possessed great discretion over the operation of the [school]" and "how she used that discretion was the subject of legitimate public debate"); *State v. Defley*, 395 So.2d 759, 761 (La. 1981) (quoting *Rosenblatt*, 383 U.S. at 86, 86 S. Ct. at 676, and concluding that a school supervisor would be considered a public official because the position "'is such that the public has an

independent interest in the qualification and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees,'"); *Reaves v. Foster*, 200 So.2d 453, 456 (Miss. 1967) (holding that school principal was a public official, reasoning that statements criticizing her acts were "fair comment in a matter concerning a large sector of the county's population, in the handling of a matter connected with government, and in an effort by those involved to better conditions in the school as they deemed it" and that the State Constitution "provides . . . a common school system, and the laws provide for the selection of the trustees and county superintendents, and the appointment by the superintendent and board of trustees of the principal to be in charge of a school where the young of the county are given an opportunity to secure an education at the taxpayers' expense."); *Kapiloff v. Dunn*, 343 A.2d 251, 258 (Md. Ct. Spec. App. 1975) (finding that high school principal was a public official under the *New York Times* standard and that the principal's "suitability for the position was a matter of public or general interest or concern"); *Junior-Spence v. Keenan*, No. 89-284, 1990 WL 17241, at *4 (Tenn. Ct. App. Feb. 28, 1990) (unpublished opinion) (finding that principal was a public official because she was an authority figure and a government representative to the students and parents with whom she dealt and her actions affected the taxpayers in the State). The Vermont Supreme Court reached a similar result in *Palmer v. Bennington School District*, 615 A.2d 498 (1992), a decision this Court finds particularly instructive.

In *Palmer*, the Bennington School District sued numerous individuals, including the principal of an elementary school, when it discovered a two million dollar deficit.

615 A.2d at 499. The school district alleged that the individuals, including the principal, misappropriated school district funds. *Id*. The principal filed a counterclaim alleging defamation based on the school boards' publication of statements charging him with misappropriation. The state trial court subsequently granted summary judgment to the school district on the principal's defamation claim, holding that he was a public official and that he failed to show that the school board published the statements with actual malice. The Supreme Court of Vermont affirmed.

Focusing on "the crucial role that public education plays in American society" and Justice Brennan's reasoning in his dissent to the denial of certiorari in *Lorain Journal Company v. Milkovich*, 474 U.S. 953, 106 S. Ct. 322 (1985), the Vermont Supreme Court concluded that the principal was a public official:

> Justice Brennan recognized that public schools are "the Nation's most important institution in the preparation of individuals for participation as citizens, and in the preservation of the values on which our society rests." . . . He also noted that "public school teachers may be regarded as performing a task that goes to the heart of representative government." . . . Implying that the public school official designation should not be limited to government employees who set government policy, Justice Brennan stated that a proper interpretation of the *Rosenblatt* guidelines would lead to the conclusion that public school teachers, by virtue of their status, are public officials.

*Id*. at 502 (quoting *Milkovich*, 474 U.S. at 958, 106 S. Ct. at 326) (internal quotation marks and citations omitted). The *Palmer* court found it significant that the principal had power and authority within his school to manage teachers and other school employees, "was in fact and appearance the person in charge of the operation of the school," and was

responsible for disbursing public funds. *Id*. at 502-03. The Vermont Supreme Court further reasoned that the *New York Times* standard protects public discourse with respect to issues in which the public has a particular interest and that the public has a special interest in the management of its public schools and school funds:

> A charge that a government employee responsible for disbursing public funds has misappropriated them is precisely the type of criticism of government that the First Amendment and the *New York Times* standard seek to protect. Because [the principal] had responsibility for and control over the governmental function of education, his position as principal "has such apparent importance" that it justifies an independent public interest "beyond the general public interest in the qualifications and performance of all government employees." . . . A contrary holding "would stifle public debate about important local issues."

*Id*. (internal citations omitted); *see also Milkovich*, 474 U.S. at 960 (indicating with respect to reporter's column challenging high school teacher's qualifications to teach young students in light of his conduct during a high school wrestling match that "[i]t is precisely this type of discussion that *New York Times* and its progeny seek to protect").

This Court is persuaded by the Supreme Court of Vermont's reasoning in *Palmer* and the opinions of other courts concluding that principals are public officials to the extent their defamation claims involve communications relating to their conduct as principals. Here, where Defendants' allegedly defamatory statements related specifically to Plaintiff's performance of the duties he was entrusted to carry out as Trombly's principal– primarily his operation of the school and disbursement of taxpayer funds– the Court concludes that the public has an independent interest in his performance that goes "beyond the general public interest in the qualification and performance of all

13

government employees." *Rosenblatt*, 383 U.S. at 86, 86 S. Ct. at 676. The Court believes that the manner in which a principal spends taxpayer funds and administers a facility entrusted to educate our children must be open to "'uninhibited, robust, and wide-open'" debate. *Milkovich*, 474 U.S. at 954, 106 S. Ct. at 323 (quoting *New York Times v. Sullivan*, 376 U.S. at 270, 84 S. Ct. at 721).

As the Court finds that Plaintiff was a public official, he must show that Defendants acted with malice when they made the alleged defamatory statements to prevail on his defamation claim. *New York Times, supra*. In his response to Defendants' pending motion, Plaintiff does not present any evidence or even argue that Defendants acted with malice. Plaintiff asserted in response to Defendants' earlier motion for summary judgment that the audit team started with a presumption of wrongdoing and found documents to support this argument. (Doc. 51 at 37). As the Court noted in its opinion with respect to that motion, however, "this appears to be pure speculation on Plaintiff's part as he presents no evidence to support this assertion." 2005 WL 2219032, at *12 (E.D. Mich. Sept. 9, 2005). The Court therefore finds that Plaintiff presents no evidence suggesting that Defendants acted with actual malice when publishing the audit report. As Plaintiff has not met this burden under *New York Times*, Defendants are entitled to summary judgment.

    **D.**  **Whether Defendants' Statements are Protected by a Qualified Privilege**

Defendants also argue that their statements are protected by the qualified privilege discussed in *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 483 N.W.2d 629 (1992). As the Michigan Court of Appeals outlined in *Prysak*, statements are protected under a qualified

14

privilege where the following elements are satisfied: "(1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Id*. at 15, 483 N.W.2d at 636; *see also Cassise v. Walled Lake Consol. Sch.*, No. 257299, 2006 WL 445960 (Mich. Ct. App. Feb. 23, 2006) (unpublished opinion) (same). This appears to be the same privilege the Sixth Circuit rejected when it reversed this Court's previous decision granting Defendants summary judgment on Plaintiff's defamation claim. *Williams v. Detroit Bd. of Educ.*, 226 Fed. App'x 446, 448 (6th Cir. 2007) (unpublished opinion).

In reversing this Court's decision, the Sixth Circuit reasoned that the privilege did not apply to Defendants' dissemination of the audit report "because this privilege only extends 'to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest of duty.'" *Id*. According to the Sixth Circuit, "[t]here is no legal interest or duty running between [the Detroit Board of Education] and the *Detroit News* . . . that would allow [the Detroit Board of Education] to claim the privilege." *Id.* Contrary to Defendants' argument in their pending motion for summary judgment, the Michigan Court of Appeals did not identify such a legal interest or duty in *Cassise v. Walled Lake Consolidated Schools*.

In *Cassise*, school officials published statements about the plaintiff, a high school student and athlete, to two bodies: the Michigan High School Athletic Association ("MHSAA") and the Oakland Press. The court found that the statements to the MHSAA, only, were protected by a qualified privilege. 2006 WL 445960, at *4. With respect to the school officials' statements to reporters, the court did not even discuss the qualified

privilege but granted summary disposition to the defendants because "no evidence of the last element of defamation was presented." *Id*.

Based on the Sixth Circuit's previous decision in the pending matter, which is the law of the case, the Court concludes that Defendants' statements to the Detroit Free Press and Detroit News are not protected by a qualified privilege.

### E. Whether Plaintiff Demonstrates that Defendants' Statements Were False

The Michigan Supreme Court has held that the plaintiff bears the burden of proving the "falsity" of the allegedly defamatory statements, even where the plaintiff is a private figure, if the statements involve a matter of public concern.[3] *Rouch*, 427 Mich. at 203, 398 N.W.2d at 266. To prove that Defendants' statements were false, Plaintiff relies on the deposition testimony of Angela Taylor, the Board auditor who prepared the audit report at issue in this case. (*See* Pl.'s Resp. Br. at 15-17.) As Plaintiff indicates, during her deposition in this case, Ms. Taylor could not link the allegations outlined in the audit with violations of specific District Work Rules. This is not the same thing, however, as testifying that the allegations in the audit were false– which she did not do. While Plaintiff further argues that he has attempted, without success, to gain access to documents which he left in his office that "would clarify the allegations in the audits" (*id*. at 17), Defendants present evidence to show that they have provided Plaintiff with all

---

[3]According to the Michigan Supreme Court, a matter of public concern "may be said to include any matter reported on by the media, . . ." *Rouch*, 427 Mich. at 203, 398 N.W.2d at 266. Clearly allegations regarding the misappropriation of public school funds is an issue of public rather than private concern.

documents in their possession. (Defs.' Reply Ex. 13.) In any event, the audit findings are based on the auditors' analysis of school records that have been provided to Plaintiff and he has not demonstrated that those records are incorrect or unreliable.

The Court therefore concludes that Defendants also are entitled to summary judgment because Plaintiff fails to create a genuine issue of material fact with respect to whether the alleged defamatory statements are false.

## V. Conclusion

For the reasons set forth above, the Court concludes that Plaintiff, as principal of Trombly, is a public official. Accordingly, to prevail on his defamation claim, Plaintiff must show that Defendants acted with actual malice when they published the alleged defamatory statements. Plaintiff fails to present any evidence to satisfy his burden of proof. Even if Plaintiff was not a public official, Defendants' statements concerned a matter of public concern and, therefore, it is Plaintiff's burden to demonstrate that the statements were false. Plaintiff fails to present evidence to create a genuine issue of material fact with respect to whether the audit findings were false.

Accordingly,

**IT IS ORDERED**, that Defendants' renewed motion for summary judgment is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Benjamin Whitfield, Jr.
Jean-Vierre Adams
Jerome R. Watson

17